UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **CAMERON POLICE JURY** | **CASE NO. 2:22-CV-05348** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **INDIAN HARBOR INSURANCE CO ET AL** | **MAGISTRATE JUDGE LEBLANC** |

### MEMORANDUM ORDER

Before the court is a Motion to Compel Arbitration and Stay Proceedings [doc. 7] filed by defendants General Security Indemnity Company of Arizona, Indian Harbor Insurance Company, Lexington Insurance Company, Old Republic Union Insurance Company, QBE Specialty Insurance Company, Safety Specialty Insurance Company, Steadfast Insurance Company, and United Specialty Insurance Company (collectively, "domestic insurers" or "defendants"). Plaintiff Cameron Parish Police Jury opposes the motion. Doc. 33. The parties have also submitted supplemental briefs at the court's request. Docs. 39, 40.

### I.
#### BACKGROUND

The suit arises from damage to property owned by plaintiff in Hurricane Laura. At all relevant times the property was insured under a surplus lines policy issued by the domestic insurers named above as well as foreign insurers Certain Underwriters at Lloyd's, London subscribing to Policy No. AMR-60898-02 ("Underwriters") and HDI Global Specialty SE ("HDI Global") (collectively, "foreign insurers"). The policy includes an

arbitration clause requiring that "[a]ll matters in difference . . . in relation to this insurance" be arbitrated in New York. Doc. 7, att. 3, p. 37. The policy also contains several service of suit endorsements designating addresses for service and providing that, in the event an insurer fails to pay any amount claimed due under the policy, it "will submit to the jurisdiction of a Court of competent jurisdiction within the United States." *Id.* at 68–89.

Plaintiff filed suit against the domestic insurers only in the 38th Judicial District Court, Cameron Parish, Louisiana, alleging that they failed to timely or adequately pay for its covered losses. Doc. 1, att. 4. Plaintiff asserts (and defendants do not dispute) that it has released its claims against the foreign insurers. Doc. 33. Defendants removed the suit to this court. They maintain that the foreign insurers cannot be omitted from this suit and that the arbitration agreement must be enforced pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"). Accordingly, they move the court to compel arbitration and stay these proceedings. Doc. 7. Plaintiff opposes the motion, arguing that (1) the domestic insurers cannot enforce the arbitration clause through the Convention and the clause is unenforceable through the Federal Arbitration Act ("FAA") because it is "reverse-preempted" under state law; (2) the clause is unenforceable because it was not signed by plaintiff; and (3) the policy's service-of-suit endorsements nullify the arbitration agreement. Doc. 33. In its supplemental memorandum it maintains that the arbitration clause cannot be enforced through equitable estoppel because it is contrary to Louisiana law. Doc. 39.

## II.
## LAW & APPLICATION

The Convention "is an international treaty that provides citizens of signatory countries the right to enforce arbitration agreements." *Bufkin Enterps., LLC v. Indian Harbor Ins. Co.*, 96 F.4th 726 (5th Cir. 2024). Its purpose is "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced by signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n. 15 (1974). Under the Convention, a court must compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004). The present case is distinguished from the others, however. In this case there are no foreign defendants, foreign insurers, or foreign signatories who could ever be held liable to plaintiff to pay any amount on any contract under this policy. The contractual agreements with the domestic insurers are expressly declared to be separate contracts. Because the agreements at issue in this matter are "entirely between citizens of the United States," they "shall be deemed not to fall under the Convention." 9 U.S.C. § 202.

The Fifth Circuit recently held that domestic insurers may enforce an arbitration agreement in such a policy under the doctrine of equitable estoppel if they can show that the claims arise from "substantially interdependent and concerted conduct" by both the

domestic and foreign insurers. *Bufkin Enterps., LLC*, 96 F.4th at 731. However, the United States Supreme Court has recognized that courts must apply ordinary state law principles in determining whether parties agreed to arbitrate. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009) (recognizing that "background principles of state contract law" govern who is bound by an arbitration agreement). The Fifth Circuit has followed suit, applying state law in determining equitable estoppel under *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524 (5th Cir. 2000). *See Newman v. Plains All American Pipeline, LP*, 23 F.4th 393, 404–05 (5th Cir. 2022). In *Bufkin*, the Fifth Circuit made an *Erie* guess referencing a Louisiana appellate court decision and various Eastern District of Louisiana opinions that equitable estoppel would apply under state law. Since that time, however, the Louisiana Supreme Court has rejected that guess. *Police Jury of Calcasieu Par. v. Indian Harbor Ins. Co.*, No. 2024-CQ-00449, slip op. at 6–10 (La. Oct. 25, 2024).

    Defendants next argue that the matter is governed by the Convention without reference to estoppel, and that estoppel is irrelevant at any rate because Louisiana law does not prohibit arbitration clauses in surplus lines policies. Doc. 51. Both arguments are refuted by recent case law. In *Bufkin*, the Fifth Circuit did not reach the insurers' argument that they had "one overarching policy agreement to which all the insurers were parties" and instead focused on the dispositive issue of whether equitable estoppel applied, assuming *arguendo* that the policies were separate. 96 F.4th at 729–30. There was good reason for the assumption. As this court noted in the ruling on appeal, the Declarations

Page listed individual policy numbers and provided under the Contract Allocation Endorsement:

> This contract shall be constructed as a separate contract between the Insured and each of the Underwriters. This evidence of coverage consists of separate sections of a composite insurance for all Underwriter's at Lloyd's combined and separate policies issued by the insurance company(ies), all as identified below. This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriter's at Lloyd's with any other insurance company(ies).

*Bufkin Enterps. LLC v. Indian Harbor Ins. Co.*, 2023 WL 2393700, at *2 (W.D. La. Mar. 7, 2023). The same endorsement also provided:

> The liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule below. The liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any Underwriters pursuant to this contract. An Underwriter shall not have its liability hereunder increased or decreased by reason of failure or delay of another Underwriter, its successors, assigns, or legal representatives. Any loss otherwise payable under the provisions of the attached policy that exceeds the allocation of "Risk" as defined herein shall be bourne proportionately by the contracts as to their limit of liability at the time and place of the loss bears to the total allocated limits herein.

*Id.* Examining identical terms, Judge Lemmon of the Eastern District of Louisiana concluded that even though there was only one policy document, the Contract Allocation Endorsement created a separate contract between plaintiff and each insurer. *Port Cargo Service, LLC v. Certain Underwriters at Lloyd's London*, 2018 WL 4042874, at *3 (E.D. La. Aug. 24, 2018). As Judge Lemmon noted, insurance policies are contracts that must "be interpreted in accordance with the intent of the parties as written" and "[t]he policy language, which is the law between the parties, specifies that the plaintiffs have separate

insurance contracts with each of the insurers." *Id.* She therefore held that the Convention only applied to the domestic insurers through the doctrine of equitable estoppel. *Id.* This court followed suit but determined that equitable estoppel did not apply, a finding reversed by the Fifth Circuit in *Bufkin*, supra. Nothing, however, has disturbed the district court reasoning as to the separate nature of the contracts.

As to whether the applicability of the Convention makes a difference, the Fifth Circuit recently made its *Erie* guess and affirmed this court's holding that La. R.S. 22:868 voids an arbitration provision in a surplus lines policy. *S.K.A.V., LLC v. Indep. Specialty Ins. Co.*, 103 F.4th 1121 (5th Cir. 2024). That statute provides, in relevant part:

> A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, or any group health and accident policy insuring a resident of this state regardless of where made or delivered, shall contain any condition, stipulation, or agreement either ...
> (2) Depriving the courts of this state of the jurisdiction or venue of action against the insurer....
> D. The provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance.

La. Rev. Stat. 22:868. As the Fifth Circuit observed, "Louisiana caselaw still regard[s] arbitration clauses as a qualitatively different type of forum-selection clause, at least for the purposes of § 22:868, because they [have] jurisdictional import and thus still [fall] under the prohibition of (A)(2)." *S.K.A.V., LLC*, 103 F.4th at 1124. Accordingly, it held that subsection (D)'s exemption for "forum or venue selection clause[s]" in surplus line policies did not apply to arbitration clauses and that arbitration clauses were prohibited even within such policies under Louisiana law. Thereafter, the Louisiana Supreme Court

removed any doubt and endorsed this view in response to the undersigned's certified question.[1] *Police Jury of Calcasieu Par.*, supra, slip op. at 6–10.

Under the McCarran-Ferguson Act, state laws regulating insurance are shielded from the preemptive effect of federal law. 15 U.S.C. §§ 1011, 1012. McCarran-Ferguson thus allows state laws like Louisiana Revised Statutes 22:868(A)(2) to "reverse-preempt" the Federal Arbitration Act's provisions on the enforceability of insurance agreements. *See, e.g., Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490 (5th Cir. 2006). However, this reverse preemption applies only to "Acts of Congress," which do not encompass treaties. *Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's, London*, 587 F.3d 714, 731–32 (5th Cir. 2009). In other words, if the Convention applies then state law (including Louisiana Revised Statutes 22:868) has no impact. *Id.* If, on the other hand, the court finds that equitable estoppel does not apply and that the domestic insurers can only enforce the arbitration clause through the Federal Arbitration Act, then § 22:868(A)(2) reverse-preempts federal law and invalidates the arbitration clause.

In response to the court's supplemental briefing order, plaintiff argues that equitable estoppel cannot be applied because (1) the arbitration clause is contrary to explicit prohibitory state laws and (2) defendants do not meet the heightened standard required to invoke equitable estoppel against a governmental entity under Louisiana law.[2] *See*

---

[1] The United States Supreme Court has recognized that certification of unsettled questions to a state's highest court is preferable because the "federal court may save 'time, energy, and resources and help build a cooperative judicial federalism.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 77 (1997) (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)) (cleaned up).

[2] Plaintiff also raises arguments based on Louisiana Revised Statutes 9:2778, which prohibits clauses requiring "a suit or arbitration proceeding to be brought in a forum or jurisdiction outside of this state" or "interpretation of the agreement according to the laws of another state" in "public contracts." This court has held that the statute applies to and invalidates such clauses in surplus lines insurance policies issued to political subdivisions of the state. *Mancuso*

*Showboat Star P'ship v. Slaughter*, 789 So.2d 554, 561–62 (La. 2001). Defendants maintain that the only proper consideration for equitable estoppel is whether they "may avail themselves of the arbitration provision because they are accused of engaging in substantially interdependent and concerted conduct with a signatory" the intertwined claims test used in *Bufkin*. But in response to the undersigned's certified question, the Louisiana Supreme Court also determined that a domestic insurer could not use equitable estoppel to enforce arbitration via a foreign insurer's policy because it conflicted with the state's positive written law barring arbitration clauses in insurance policies under La. R.S. 22:868. *Police Jury of Calcasieu Par.*, supra, slip op. at 16. As the court emphasized, "there is no place in Louisiana law for a common law doctrine addressing subjects of existing positive law of the Civil Code." *Id.* The court criticized the Fifth Circuit's use of equitable estoppel to provide the protections of the Convention to domestic insurers in *Bufkin*, noting that domestic insurers do not fall under that treaty's rules and that the panel had failed to grapple with conflicting state law applicable to those insurers. *Id.* at 17.

Plaintiff has released its claims against the foreign insurers, forfeiting its right to a corresponding amount of recovery. The remaining claims are against domestic insurers, with whom (per the terms of the policy) plaintiff had individual contracts. Based on the latest interpretation from the Louisiana Supreme Court, the court finds no basis on which the defendant insurers can invoke the Convention's protections to upset Louisiana law in these domestic insurance contracts. Accordingly, the arbitration clause is invalidated by

---

*v. Starr Surplus Lines Ins. Co.*, 701 F.Supp.3d 474 (W.D. La. 2023). The Louisiana Supreme Court recently endorsed this interpretation, but the court need not reach the argument here. *Police Jury of Calcasieu Par.*, slip op. at 11–14.

La. R.S. 22:868 and the court need not consider plaintiff's other arguments against its enforcement.

### III.
#### CONCLUSION

For the foregoing reasons, the court hereby **ORDERS** that the Motion to Compel Arbitration and Stay Proceedings [doc. 7] and Motion to Stay [*id.*] be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 4th day of November, 2024.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**